## Brown *v.* Bouslog.*

(Division B.  Sept. 24, 1928.  Suggestion of Error Overruled Oct. 22, 1928.)

[118 So. 346.  No. 27246.]

*Corpus Juris-Cyc References:  Taxation, 37Cyc, p. 1357, n. 95.

*M. D. Brown* and *R. A. Wallace,* for appellant.

*Gex & Russell,* for appellee.

*M. D. Brown* and *R. A. Wallace,* in reply for appellant.

Argued orally by *R. A. Wallace* and *M. D. Brown,* for appellant, and *D. M. Russell,* for appellee.

ANDERSON, J. Appellee filed the bill in this case in the chancery court of Harrison county against appellant to have confirmed his title to certain lots described in the bill as being in Gillespie addition to the city of Gulfport, but outside the corporate limits of the city. Appellant made her answer a cross-bill, seeking to establish her title to the south half of the north half, and the northeast

quarter of the northwest quarter, of section 21, township 7 south, range 11 west, in Harrison county, which includes the lots in the Gillespie addition to the city of Gulfport claimed by appellee. Both parties claimed title to the land involved by virtue of patents from the state, but appellee's patent was prior in date to appellant's, and described the land as being certain lots in Gillespie addition to the city of Gulfport, while appellant's patent described it according to governmental subdivisions. The case was heard on original bill, answer, and cross-bill, and answer to the cross-bill, and proof, resulting in a decree confirming appellee's title to the land, from which decree appellant prosecutes this appeal.

Certain lands in Harrison county, of which the lots involved are a part, were sold to the state for their taxes in the years 1874, 1875, and again in 1879, in which sales the land was described according to governmental subdivisions. After these sales to the state, in some way immaterial to consider, the land got back on the assessment rolls of Harrison county. In 1906 Gillespie, claiming to be the owner of certain lands, of which the lots involved are a part, had a survey made thereof, dividing it up into streets, alleys, lots, and blocks, which survey was platted, and the plat filed and recorded, in the office of the clerk of the chancery court of Harrison county, where it has since remained. This plat is known as "Gillespie addition" to the city of Gulfport. Since it was made and recorded—more than twenty years before the bill in this case was filed—the lots and blocks included in the plat have been assessed for state and county taxes, according to the plat, and not by governmental subdivisions, and have been so conveyed by the owners. In other words, the tax-assessing authorities, as well as all others dealing with the lots, have recognized and acted upon the description as contained in the Gillespie survey and plat, and, under that description, the lots were, after 1906, forfeited to the state for their taxes, and so appeared

on the state's list of forfeited lands. It is undisputed in the evidence that, when appellee received from the state his patent, the state owned the lots. As stated, appellee's patent described the lands according to the Gillespie plat, while appellant's patent, subsequent in date to that of appellee, described it according to governmental subdivisions.

Appellee's positions is, and the chancellor so held, that, under the law, the state could convey the lots by any appropriate description, and that a conveyance describing the lots according to the Gillespie plat was such a description and passed the state's title. On the other hand, appellant contends that the Gillespie survey and plat were illegal; that, when made, Gillespie did not own the land, and, furthermore, that, if he did own it, there was no authority of law for such a survey and plat, and therefore appellee's patent from the state so describing the land was void and of no effect, and appellant's patent, describing the land according to governmental subdivisions, was valid and conveyed the state's title.

The view we take renders it unnecessary to decide whether the state acquired its title to the lots involved under one of the tax sales, describing the land of which they are a part according to governmental subdivisions, or whether it acquired its title subsequent to the making and recording of the plat of the Gillespie addition to the city of Gulfport, under a tax sale describing it according to that plat. By one or the other of those sales the state had the title. The question is whether the state, by its patent to appellee, describing the lots according to the Gillespie plat, parted with its title thereto.

The land commissioner, acting for the state, is not required to sell all of a subdivision of land owned by the state. He may sell any part of it by appropriate description. If the state owns a whole section of land, he could sell any part of it, for illustration, forty acres of it; and the same is true, of course, where the state is the owner

of a smaller governmental subdivision of a section. And in describing land patented, any description that would be valid in a conveyance between individuals will be valid as between the state and its patentee. For more than twenty years, the taxing authorities of the state and county, as well as individuals dealing with the lands in Gillespie addition, have dealt with it according to the Gillespie survey and plat. Why should not the state so deal with it in conveying its title?

Take, for illustration, a case where there is forfeited to the state, for its state and county taxes, a quarter section of land described according to governmental subdivisions, and, after the state acquires its title, the land is taken into a municipality, and surveyed and platted into streets, alleys, lots, and blocks. Is the state, in conveying its title by patent, confined to the description of the land as it appears on its list of lands forfeited to the state for taxes? We see no good reason for so holding. The state may convey all of it, either describing it by governmental subdivisions, or according to the municipal plat, or it may convey any part of it, describing it likewise. The Gillespie addition to the city of Gulfport is a fixed, certain thing, represented by a survey and plat of record in the chancery clerk's office of Harrison county. All persons dealing with it may resort to this plat, and have resorted to it, for a proper description. In addition to describing land in a conveyance according to governmental subdivisions, it may be legally described according to natural monuments, such as streams, trees, etc., or permanent artificial monuments, or it may be described as bounded on the north by A's on the east by B's, on the west by C's, and on the south by D's land. And the state can part with its title to land under such description. The description of the lots involved according to the Gillespie plat points unerringly to a certain thing by which such description may, by parol, be made perfect.

*Board of Sup'rs of Harrison County* v. *Seal,* 66 Miss. 129, 5 So. 622, 3 L. R. A. 659, 14 Am. St. Rep. 545, involved the legality of a conveyance and plat of the "Mississippi City Company," and it was there held by the court that the dedication of "Railroad street" by the promoters of the company was binding on those who afterwards purchased land laid off as such street, for the reason that the purchaser of the entire tract of land constituting the "city" sold lots according to the plat, recognizing the streets thereon indicated. And this was true, notwithstanding the fact that there was never any incorporation of "Mississippi City" as a town, and therefore there had not been any formal acceptance by it of such dedication.

It was recently held by this court in *Dimitry* v. *Jones,* 115 So. 786, that:

"The state, in its duty to government, can adopt any method for making up its land assessment rolls that it deems best, only so long as the method adopted conforms to the constitutional requirements of reasonable notice and due process. Section 6917, Hemingway's Code 1917 (section 8213, Hemingway's Code 1927), provides how land assessments shall be made up (1) as to those lands regularly surveyed; and (2) it goes on to provide that 'lands not surveyed according to the plan of the government surveys shall be assessed by the designation used on the government maps, or by other descriptions, or name by which they may be distinguished.' "

*Affirmed.*